UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
KALIKA BHAGWAT and NARESH PERSAUD, :
                                          :

                     Plaintiffs, :
                                          :            **REPORT AND**
               -against-            :            **RECOMMENDATION**
                                          :
QUEENS CARPET MALL, INC. and JAANKIE :            14-cv-5474 (ENV)(PK)
TULSIE, individually,                       :
                                          :
                   Defendants. :
                                          :
------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

       On April 17, 2017, Plaintiffs Kalika Bhagwat ("Bhagwat") and Naresh Persaud ("Persaud") (together with Bhagwat, "Plaintiffs") filed an Amended Complaint against Queens Carpet Mall, Inc. ("Queens Carpet Mall") and Jaankie Tulsie ("Tulsie") (together with Queens Carpet Mall, "Defendants") under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* the New York Labor Law ("NYLL") §§ 650 *et seq.* (*See* Am. Compl. ¶ 1, Dkt. 22.) On referral from the Honorable Eric N. Vitaliano is a motion for default judgment filed on December 20, 2017 (the "Motion") by Plaintiffs. (*See* Motion for Default Judgment, Dkt. 28; Referral Order dated May 9, 2018.) For the reasons explained herein, the undersigned respectfully recommends that the Motion be granted.

## BACKGROUND

### I.    Facts As Alleged in the Amended Complaint

       Queens Carpet Mall was a New York carpet sales and installation corporation located at 171-15 Jamaica Avenue, Jamaica, New York, 11432. (Am. Compl. ¶¶ 6, 8, Dkt. 22.) At all times relevant to the Amended Complaint, Queens Carpet Mall was "an 'enterprise engaged in commerce' or in the production of interstate goods for commerce" with an annual gross volume of sales not less than

$500,000. (*Id.* ¶¶ 16-17.)  It was active from 2001 until May 2015, when it was "apparently dissolve[ed]." (*Id.* ¶ 6.)  The property continues to be owned by Tulsie who has incorporated a new carpet sales and installation business at the same address.  (*Id.* ¶¶ 6-7.)  Tulsie was Queens Carpet Mall's "owner, partner, officer, and/or manager." (*Id.* ¶ 10.)  She "managed, owned, controlled and/or operated Queens Carpet Mall and regularly exercised the authority to hire and fire employees, determine the work schedule of employees, set the rate of pay of employees and control the finances and operations of the business." (*Id.* ¶ 11.)  Tulsie also "directly or indirectly acted in the interest of an employer towards Plaintiffs" by controlling their employment terms.  (*Id.* ¶ 12.)

Queens Carpet Mall employed Bhagwat and Persaud as non-exempt carpet installers from October 2004 through early August 2015, and from 2008 through early August 2015, respectively. (*Id.* ¶¶ 5, 21, 27.)  Plaintiffs were scheduled to work five to six days per workweek and were paid $105 per day.  (*Id.* ¶¶ 24-25, 30-31.)  They worked from 8:00 a.m. until 8:00 p.m., "routinely" working 60 hours per workweek, but were not compensated for their overtime.  (*Id.* ¶¶ 22, 26, 28, 32, 55.)  Defendants also failed to provide Plaintiffs with written notices regarding their pay rates, and wage statements upon each payment of wages.  (*Id.* ¶¶ 60, 61.)  Plaintiffs seek to recover for unpaid overtime, Defendants' failure to provide their wage notices and wage statements, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs. (*Id.* at 10.)

**II.     Procedural Background**

On September 18, 2014, Bhagwat filed a Collective Action Complaint against Defendants, for violations of the FLSA and applicable laws of the State of New York.  (Compl., Dkt. 1.)  On November 3, 2014, Baghwat filed a request for a Certificate of Default, which the Clerk of Court granted on November 6, 2014.  (Req. for Certificate of Default, Dkt. 8; Certificate of Default, Dkt. 11.)  On July 8, 2015, Bhagwat filed his first motion for default judgment, which was denied.  (Dkt. 12; Dkt. 13.)  On June 9, 2016, Bhagwat filed a renewed motion for default, purporting to be on

behalf of Bhagwat and Persaud.  (Dkt. 15.)  On April 11, 2017, Judge Vitaliano adopted the undersigned's Report and Recommendation, denying Bhagwat's motion, with leave to renew after filing and serving Defendants with an amended complaint that added Persaud and his claims, and was in full compliance with Local Civil Rules 7.1, 55.1 and 55.2.  (Dkts. 18, 21.)

Plaintiffs Bhagwat and Persaud filed their Amended Complaint on April 17, 2017.  (Dkt. 22.) After Defendants failed to appear, Plaintiffs requested a Certificate of Default, which was entered on June 23, 2017, and moved for default judgment.  (Dkts. 24, 25, 26.)  On November 21, 2017, Judge Vitaliano denied the motion without prejudice for failing to comply with Local Civil Rules and the Court's individual rules.  (*See* Memorandum and Order dated Nov. 21, 2017, Dkt. 27.)

On December 20, 2017, Plaintiffs filed the Motion, again requesting default judgment on the Amended Complaint.  (Dkt. 28.)  Judge Vitaliano referred the Motion to the undersigned for a report and recommendation.  (Referral Order dated May 9, 2018.)  An inquest was held on August 9, 2018.  The undersigned found that Plaintiffs again "failed to comply with Local Civil Rule 55.2(c) by mailing the Motion and accompanying papers to the incorrect address for Defendant Queens Carpet Mall, Inc."  (Minute Entry dated Aug. 9, 2018.)  Plaintiffs were permitted to correct their error by mailing the Motion and accompanying papers to the correct address and filing proof of such mailing by August 17, 2018.  (*Id.*; Order amending the Minute Entry dated Aug. 10, 2018.)  Plaintiffs mailed the Motion and accompanying papers, and filed proof of their compliance on August 17, 2018. (Dkt. 35.)

## DISCUSSION

### I.      Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  Then, the plaintiff may move the court

for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The Court must ensure that (1) jurisdictional requirements are satisfied, *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125-26, 133 (2d Cir. 2011); (2) plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) plaintiff's allegations, when accepted as true, establish liability as a matter of law, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A court exercises significant discretion "in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *see also, Mickalis Pawn Shop*, at 129.

## II.    Procedural Requirements

In order to grant a default judgment, the Court must first ensure that Plaintiffs took all of the required procedural steps in moving for default judgment, including providing proper notice to Defendants of the motion. Local Civ. R. 55.2(c). Plaintiffs properly served the Summons and Amended Complaint on Queens Carpet Mall via the Secretary of State and at Tulsie's place of abode, mailing a copy to the same address. *See* Fed. R. Civ. P. 4 (e)(1), (h)(1)(A); N.Y. Bus. Corp. Law § 306(b)(1); C.P.L.R. § 308(2). (Dkt. 23-1, 23-2.) Judge Vitaliano permitted renewal of the Motion based on previously issued certificates of default. (*See* Memorandum and Order dated Nov. 21, 2017, Dkt. 27.) In compliance with Local Civil Rule 55.1 and Judge Vitaliano's Individual Motion Practice Rules, Plaintiffs submitted an Affidavit in Compliance with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, dated November 30, 2017, stating that as of the Active Duty Status Date of November 29, 2017, Tulsie is not in Active Duty Status. (Dkt. 28-10) *Pruco Life Ins.*

4

*Co. of N.J. v. Estate of Locker*, 12-CV-882, 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012) (finding that a nonmilitary affidavit has to be "based on an investigation performed after the claimed default").

In compliance with Local Civil Rule 7.1(a), Plaintiffs' Motion includes a Notice of Motion for Default Judgment (Dkt. 28.); Plaintiffs' Amended Memorandum of Law in Support of Plaintiffs' Motion for Final Default Judgment (Dkt. 28-1); and supporting affidavits and exhibits (Dkt. 28-2 - 28-11). In compliance with Local Civil Rule 55.2(b), Plaintiffs include the Clerk's Certificate of Default (Dkt. 28-9); the Amended Complaint (Dkt. 28-4); and a proposed form of default judgment. (Dkt. 28-2).

Pursuant to Local Rule 55.2(c), Plaintiffs mailed the Motion to Tulsie and Queens Carpet Mall. [1] (Dkt. 28-1; *see* Minute Entry dated Aug. 9, 2018; Order amending the Minute Entry dated Aug. 10, 2018; Dkt. 35.) Plaintiffs have demonstrated that they have taken the required procedural steps under the Local Rules by requesting and obtaining the Certificate of Default and then filing proof of mailing all motion papers to Defendants. Plaintiffs have now complied with all the requirements of the Local Rules.

### III.   Jurisdiction

This Court has subject matter jurisdiction over this action because it arises under the FLSA, a federal statute. *See* 28 U.S.C. § 1338(a). It also has supplemental jurisdiction over the related NYLL claims. *See* 28 U.S.C. §§ 1331, 1367.

"[A] court may not properly enter a default judgment until it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been

---

[1] Tulsie's correct address is 101-51 (sometimes written as 10151) 120th Street, Richmond Hill, NY 11419. (*See* Affidavit of Service, Dkt. 23-1; Motion Service List, Dkt. 28-1.) Queens Carpet Mall's correct address is 171-15 and 171-13 (sometimes written as 17115 and 17113, respectively) Jamaica Avenue, Jamaica, NY 11432. (Mot. Hr'g at 9, 17, 22, 31, 32, Dkt. 33; *see* Am. Compl. ¶ 6, Dkt. 22.)

effectively served with process." *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050 (FB) (CLP), 2015 WL 1469619, at *4 (E.D.N.Y. Mar. 30, 2015).  The Amended Complaint states that Queens Carpet Mall was a New York corporation with a physical address in Jamaica, New York.  (Am. Compl. ¶¶ 6, 8, Dkt. 22.)  Because Queens Carpet Mall was incorporated in New York, this state has general jurisdiction over it.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (alteration in original).  Personal jurisdiction over a New York corporation is established once it is validly served in this district.  *See* Fed. R. Civ. P. 4(k)(1)(a) ("Serving a summons . . . establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . .")  Plaintiffs properly served the Summons and Amended Complaint on Queens Carpet Mall via the Secretary of State.  *See* Fed. R. Civ. P. 4 (e)(1), (h)(1)(A); N.Y. Bus. Corp. Law § 306(b)(1).  (Dkt. 23-2.)

Plaintiffs testified that Tulsie's home address is in New York, and she was served there. (Aug. 9, 2018 Mot. Hr'g 18, 31, Dkt. 33; Affidavit of Service, Dkt. 23-1.)  The Amended Complaint does not state that Tulsie is domiciled in New York.  However, because she transacted business within the state as an owner and manager of Queens Carpet Mall, she may be subject to the Court's specific jurisdiction under New York's long-arm statute.  *See* C.P.L.R. § 302(a)(1).  By operating a corporation within the state, hiring and firing the corporation's emmployees and setting their work schedule, Tulsie has "purposefully avail[ed] [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Additionally, she was properly served at her place of abode.  *See* Fed. R. Civ. P. 4 (e)(1); C.P.L.R. § 308(2).  (Aff. of Service, Dkt. 23-1.)  Accordingly, the undersigned finds that this Court's exercise of personal jurisdiction over Tulsie is proper.

IV.     **Liability**

a.   Employment Relationship Under the FLSA

In determining liability, the Court accepts as true the well-pleaded allegations of the

Amended Complaint, drawing all reasonable inferences in favor of Plaintiffs.  *See Finkel*, 577 F.3d at

84; *see also Greyhound Exhibitgroup, Inc., v. E.LU.L. Realty Corp.*, 973 F.2d 155, 158-59 (2d Cir. 1992).

Plaintiffs seek a default judgment against Defendants for FLSA violations.  In order to plead a cause

of action under the FLSA, Plaintiffs must establish that: (1) Defendants are employers subject to the

FLSA; (2) Plaintiffs are employees within the meaning of the FLSA; and (3) the employment

relationship is not exempted from the FLSA.  *See Saucedo v. On the Spot Audio Corp.*, No. 16-CV-

00451 (CBA)(CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL

780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213.

The FLSA broadly describes an employer as "any [person or corporation] acting directly or

indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does

not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d

Cir. 2013).  A defendant is an FLSA employer if it meets the criteria for either enterprise or

individual coverage.  *See Saucedo*, 2016 WL 8366837, at *4.  The enterprise coverage test considers

whether the employer

> has employees engaged in commerce or in the production of goods for
> commerce, or . . . has employees handling, selling, or otherwise
> working on goods or materials that have been moved in or produced
> for commerce by any person; and . . . whose annual gross volume of
> sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Res. Inc.*, 93 F. Supp. 3d 19, 33

(E.D.N.Y. 2015).

The individual coverage test takes into account the "employment actions of each" plaintiff

to determine whether "the employees themselves are 'engaged in commerce.'"  *Saucedo,* 2016 WL

8376837, at *4. "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Plaintiffs allege that, during the relevant period, "Defendant [Queens Carpet Mall] was an 'enterprise engaged in commerce' or in the production of interstate goods for commerce" with an annual gross volume of sales not less than approximately $500,000. (*See* Am. Compl. ¶¶ 16-18.)

Ordinarily, allegations repeating statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce. In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences. *See e.g., Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York"); *Fermin*, 93 F. Supp. 3d at 33 (it was "reasonable to infer that [a Peruvian restaurant] requires a wide variety of materials to operate" and "some of these materials moved or were produced in interstate commerce."); *but see Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (JB)(SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012) (recommending the denial of a default judgment where Plaintiff security guard stated "only conclusory statements about interstate commerce"), *R&R adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012).

Here, considering the nature of Queens Carpet Mall's business, it is reasonable to infer that Plaintiffs, as employees of a carpet sales and installation business, engaged in interstate commerce by handling and otherwise working on goods moved from or produced in other states—*i.e.*, carpets. Accordingly, the undersigned finds Plaintiffs' allegations sufficient to establish Defendant Queens Carpet Mall's employer status for the purposes of this Motion. *See Fermin*, 93 F. Supp. 3d at 33.

In addition, an employer who "exercises operational control over the employee in question" may be liable under the FLSA. *See Irizarry,* 722 F.3d at 110. Courts in the Second Circuit assess operational control by applying the "economic reality" test, which determines "whether workers are

8

employees and [ ] whether managers or owners are employers." *Id.* at 104.  The economic reality test considers whether the alleged employer:  "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted).  The Court must consider the "totality of the circumstances," and no one factor is dispositive.  *Irizarry*, 722 F.3d at 106.  The "ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself."  *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2006)) (internal quotes omitted).

Plaintiffs allege that Tulsie was their employer.  (Am. Compl. ¶ 12.)  She "regularly exercised the authority" to (1) hire and fire employees; (2) set work schedules and control employment terms; (3) make payroll decisions, establishing Plaintiffs' rate of pay; and (4) control the finances and operations of the business.  (*Id.* ¶¶ 11-12.)  Accepting these allegations as true, the totality of the circumstances supports the conclusion that Defendant Tulsie was an employer under the FLSA.

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The statute protects employees "who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).  Plaintiffs allege that they were employed by Defendants as carpet installers.  (Am. Compl. ¶¶ 5, 21, 27.)  Accepting these well-pleaded allegations as true, the undersigned finds that Plaintiffs were employed in an enterprise engaged in commerce, and fall within the FLSA's definition of employees.

Finally, Plaintiffs have adequately shown that they are not exempt from the FLSA's protections, an analysis that requires more than a recitation of the statutory elements in the

Amended Complaint. *Fermin*, 93 F. Supp. 3d at 32 (citations omitted).  Plaintiffs state that they were employed as non-exempt carpet installers.  (Am. Compl. ¶¶ 5, 21, 27.)  The FLSA lists several exemptions, but does not include the function of a carpet installer.  *See* 29 U.S.C. § 213. Bhagwat testified that, among other tasks, Plaintiffs would sometimes make sales for the business. (Aug. 9, 2018 Mot. Hr'g 12:3-5, Dkt. 33.)  The FLSA exempts an employee employed "in the capacity of an outside salesman"; however, Bhagwat's description of his work does not meet that definition.  *See* 29 U.S.C. § 213(a)(1).

> The term 'employee employed in the capacity of outside salesman' in section 13(a)(1) of the Act shall mean any employee: whose primary duty is (i)making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500.  Primary duty means

> the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

29 C.F.R § 541.700.

Plaintiffs do not mention making sales in the Amended Complaint and the facts do not indicate that making sales or obtaining orders or contracts was their primary duty.  Carpet installation was their primary duty.  Accordingly, the undersigned is satisfied that Plaintiffs are non-exempt employees under the FLSA.  Plaintiffs have shown that the FLSA applies to this case.

      b.  <u>Employment Relationship Under the NYLL</u>

In order to plead a cause of action under the NYLL, Plaintiffs must establish that their employment relationship with Defendants falls within the NYLL, which governs "any person employed for hire by an employer in any employment."  N.Y. Lab. L. § 190.  Under the NYLL, employers are not required to have a nexus to interstate commerce or "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally

liable for violations.  *Saucedo,* 2016 WL 8376837, at *6.  Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  Since Defendants are employers under the FLSA, they are also employers under the NYLL.  They may be held jointly and severally liable for violations.  *Saucedo,* 2016 WL 8376837, at *6.

Plaintiffs have shown that the NYLL applies to this case.

c.   Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a).  The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness.  *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015).  The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint."  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Under the NYLL, the statute of limitations is six years.  *See* N.Y. Lab. Law §§ 198(3), 663(3).

Bhagwat seeks to recover damages for violations that occurred between September 18, 2008 and August 8, 2014.  (Bhagwat's 2d Am. Aff. of Damages, Dkt. 32-1.)  Bhagwat filed the Complaint on September 18, 2014.  (Dkt. 1.)  Since he was specifically named in the Complaint, Bhagwat may recover for FLSA violations that occurred on or after September 18, 2011.  He may recover for

NYLL violations that occurred on or after September 18, 2008.  The undersigned considers

Bhagwat's recovery under NYLL for the period from September 18, 2008 to August 8, 2014.

Persaud seeks to recover damages for violations that occurred between October 16, 2008

and August 5, 2014.  (Persaud's 2d Am. Aff. of Damages, Dkt. 32-1.)  Persaud was named in the

Amended Complaint filed on April 17, 2017.  (Dkt. 22.)  He may, thus, recover for FLSA violations

that occurred on or after April 17, 2014.  He may recover for NYLL violations that occurred on or

after April 17, 2011.  Accordingly, the undersigned considers Persaud's recovery under NYLL for

the period from April 17, 2011 to August 5, 2014.

V.   **Plaintiffs' Claims and Damages**

Plaintiffs seek overtime compensation, statutory damages for wage notice and wage

statement violations, liquidated damages, attorneys' fees, costs, pre-judgment interest, and post-

judgment interest.  (Pls.' Mem. at 6-7, Dkt. 28-1; Am. Compl. at 10, Dkt. 22.)  In support of the

Motion, Plaintiffs submitted damages calculations and a Plaintiffs' Attorneys' Fees and Costs

Affidavit.  (Pls.' 2d Am. Aff. of Damages, Dkts. 32-1; Jaffe Aff., Dkt. 28-8.)

a.   Overtime Compensation

Under the FLSA and NYLL, an employee must "be compensated at a rate of no less than

one and one-half times the regular rate of pay for any hours worked in excess of forty per week."

*Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see* 29 U.S.C.

§ 207(a); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA definition of

overtime into the NYLL).  In order to support "a reasonable inference" that he or she "worked

more than forty hours in a given week," *Nakahata*, 723 F.3d at 201, a plaintiff must "sufficiently

allege . . . some uncompensated time in excess of the 40 hours [of work in a given workweek],"

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide

"sufficient detail about the length and frequency" of unpaid work, *Nakahata*, 723 F.3d at 201.  *See*

*also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim). When precise records of evidence do not exist, a plaintiff may meet this burden "by relying solely on his or her recollection." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (internal quotation marks and citations omitted). A defendant is liable to the plaintiff for overtime compensation that is calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.102; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *see also Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ)(RLM), 2016 WL 4147143, at *4 (E.D.N.Y. Aug. 4, 2016).

The NYLL minimum wage rate was $7.15 at the beginning of Bhagwat's recovery period of September 18, 2008 and Persaud's of April 17, 2011; it went up to $8 on December 31, 2013 and stayed at that rate until December 31, 2014, after the end of Persaud's and Bhagwat's recovery periods of August 5 and 8, 2014, respectively. *See* N.Y. Lab. Law § 652. The FLSA minimum wage rate was $6.55 when they began and $7.25 when they ended. *See* 29 U.S.C. 206(1).

Bhagwat states that he worked 5 days per week[2] for approximately 60 hours per week, *i.e.*, 20 hours of overtime, from September 18, 2008 until August 8, 2014, a period of 306 weeks. (Bhagwat's 2d Am. Aff. of Damages ¶¶ 4-7, Dkt. 32-1; *see* Am. Compl. ¶ 21, Dkt. 1.) During this period, he was paid $105 per day or $525 per week, making his hourly rate for a twelve-hour day $8.75. (*See* Am. Compl. ¶ 25.) Because this rate was higher than the minimum wage rates of $7.15 and $8 applicable at the time, the undersigned calculates the overtime rate based on his regular rate of $8.75.

---

[2] In the Amended Complaint, Plaintiffs state that they worked five to six days per week, but in their Second Amended Affidavits of Damages and at the inquest, they state that they "mostly" worked five days per week. (*Compare* Dkts. 22 ¶¶ 24, 30 *with* Dkts. 32-1 ¶ 5 *and* Mot. Hr'g at 12, 24, Dkt. 33.) The undersigned bases the damages calculation on five days, as stated in the affidavits and confirmed by Plaintiffs' testimony.

The period from September 18, 2008 until August 8, 2014 is 307 weeks.  Bhagwat was only paid his regular rate and was entitled to but did not receive the overtime premium of $4.37 per hour, for 20 hours per week, for 307 weeks.  Accordingly, the undersigned recommends that Bhagwat be awarded **$26,831.80 in unpaid overtime compensation.**

Persaud states that he worked 5 days per week for approximately 60 hours per week, *i.e.*, 20 hours of overtime, from October 16, 2008 until August 5, 2014, a period of 301 weeks.  (Persaud Suppl. Aff., Dkt. 34-1; Persaud's 2d Am. Aff. of Damages ¶¶ 4-7, Dkt. 32-1; *see* Am. Compl. ¶ 32, Dkt. 1.)  However, based on the NYLL statute of limitations, he may only recover for the period from April 17, 2011 to August 5, 2014, a total of 172 weeks.  During this period, Persaud was paid $105 per day.  (Am. Compl. ¶, 31.)  At twelve hours a day, his hourly rate would be $8.75.  However, Persaud testified that, even though he always worked more than 40 hours a week, he and Tulsie had an oral agreement that he would be paid $105 for working eight hours a day, or $525 for a 40-hour week.  (Aug. 9, 2018 Mot. Hr'g 24, 26, 28; Dkt. 33.)

> If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which the time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.  If an employee is hired at a salary of $350 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $350 divided by 35 hours, or $10 an hour, and when the employee works overtime the employee is entitled to receive $10 for each of the first 40 hours and $15 (one and one-half times $10) for each hour thereafter.

29 C.F.R. § 778.113.  Based on Persaud's testimony of his agreement with Tulsie, the undersigned divides his $525 payment per week by 40 hours, instead of 60 hours, resulting in an hourly rate of $13.12.  Because this rate is higher than the minimum wage rate during the same period under the NYLL and the FLSA, his half-time rate in calculating overtime pay is $6.56.[3]

Persaud was entitled to but did not receive $6.56 per hour, for 20 hours per week, for 172

---

[3] Bhagwat testified that he had a similar agreement, but he asserted that his hourly rate was, in fact, $8.75. (Aug. 9, 2018 Mot. Hr'g 40:6-9; Dkt. 33.)

weeks.  Accordingly, the undersigned recommends that Persaud be awarded **$22,566.40 in unpaid overtime compensation.**

      b.  <u>Wage Notice Violations</u>

Plaintiffs allege that they are entitled to damages because of Defendants' failure to provide wage notices.  (Pls.' 2d Am. Aff. of Damages, ¶ 11 Dkts. 32-1; *see* Am. Compl. ¶¶ 60, 61, Dkt. 1.) Plaintiffs allege violations of Section 195(1) of the NYLL, the statute's wage provision.  Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.  Effective April 9, 2011, violations carried damages of $50 per workweek, for a maximum of $2,500.  N.Y. Lab. L. § 198(1-b). After February 27, 2015, violations of Section 195(1) carry damages of $50 per workday, for a maximum of $5,000.  N.Y. Lab. L. § 198(1-b).

Defendants failed to provide Plaintiffs with the required written wage notice.  (*Id.* ¶ 60.) Defendants' violations of the wage notice provision occurred before February 27, 2015; therefore, Plaintiffs are entitled to $50 per workweek for a maximum of $2,500.  Defendants violated the provisions of the statute from April 9, 2011 (the effective date of the provision) until August 5 and 8, 2014 (Plaintiffs' termination dates, respectively), a period of 173 weeks, equaling $8,650 in damages.  Accordingly, the undersigned recommends that Bhagwat and Persaud each be awarded the maximum statutory damages of **$2,500 for the NYLL wage notice claim**.

      c.  <u>Wage Statement Violations</u>

Plaintiffs allege violations of Section 195(3) of the NYLL, the statute's wage statement provision.  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  Effective April 9, 2011, violations carried

damages of $100 per workweek, for a maximum of $2,500. N.Y. Lab. L. § 198(1-d). After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday, for a maximum of $5,000. N.Y. Lab. L. § 198 (1-d).

Defendants failed to provide Plaintiffs with required written wage statements. (*Id.* ¶ 61.) Defendants' violations of the wage statement provision occurred before February 27, 2015; therefore, Plaintiffs are only entitled to $100 per workweek for a maximum of $2,500. Defendants violated the wage statement provision for a period of 173 weeks, equaling $17,300 in damages. Accordingly, the undersigned recommends that Bhagwat and Persaud each be awarded the maximum statutory damages of **$2,500 for the NYLL wage notice claim**.

      d.   <u>Liquidated Damages</u>

Under both the FLSA and the NYLL, an employee is entitled to recover liquidated damages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663. However, if the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages. 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a). Since Defendants failed to respond to the Motion, no good faith exists and liquidated damages are appropriate. *See Herrera*, 2015 WL 1529653, at *12 (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (following *Chowdhury*). Ordinarily, "the law providing the greatest recovery will govern." *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citations omitted). Here, Plaintiffs may be awarded liquidated damages on their overtime and unpaid wage

claims under either statute.

Plaintiffs may recover "one hundred percent of the total amount of wages found to be due" from April 9, 2011 and thereafter.  N.Y. Lab. Law § 198(1-a).  Plaintiffs may only recover twenty-five percent of the damages prior to that date.  *Id.*

Bhagwat was entitled to unpaid overtime compensation of $26,831.80 for a period of 307 weeks.  For 133 weeks of that period, from September 18, 2008 until April 8, 2011, he is entitled to liquidated damages totaling 25%: $2,906.50 (133 weeks x 4.37 half-time rate x 20 hours x .25).  For the remaining 174 weeks of that period, April 9, 2011 until August 8, 2014, he is entitled to liquidated damages totaling 100%: $15,207.60 (174 weeks x 4.37 half-time rate x 20 hours).  Accordingly, the undersigned recommends an award of **$18,114.10 for Bhagwat in liquidated damages.**

Persaud was entitled to unpaid overtime compensation of **$22,566.40** for a period of 172 weeks, beginning on April 17, 2011, a date after the April 9, 2011 amendment.  Accordingly, he is entitled to recover liquidated damages totaling 100% of that figure.  Accordingly, the undersigned recommends an award of **$22,566.40 for Persaud in liquidated damages**.

        e.    <u>Pre-Judgment Interest</u>

Plaintiffs seek pre-judgment interest on their compensatory damages from the midpoint of their employment until the date they first filed for damages at ".09% per annum."  (Pls.' 2d Am. Aff. of Damages ¶ 12, Dkt. 32-1; *see* Am. Compl. at 10, Dkt. 1.)  Since "liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL."  *Saucedo*, 2016 WL 8376837, at *16 (citation omitted).  The statutory interest rate for pre-judgment interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.  Courts have discretion in determining a reasonable date from which to award pre-judgment interest, such as the "the earliest ascertainable date the cause of action existed" or a midway point

between when the plaintiff began and ended work if damages were incurred at various times. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

Because Bhagwat was denied wages over a period of 307 weeks, the undersigned will use an intermediate date. The midpoint between September 18, 2008 and August 8, 2014 is August 29, 2011 and there are 1,075 days between this midpoint and the end of his employment. The undersigned multiplied $26,831.80 in compensatory damages by the 9% interest rate to get an interest rate of $2,414.86 per year. That amount divided by 365 days in a year equals $6.61 in interest per day. That amount multiplied by the 1,075 days between the midpoint of Bhagwat's employment and the end of his employment equals a total interest of $7,105.75. Accordingly, the undersigned recommends that Bhagwat be awarded **pre-judgment interest of $7,105.75, plus $6.61 per day between August 9, 2014 and the date of entry of judgment.**

For Persaud, the midpoint between April 17, 2011 and August 5, 2014 is December 10, 2012 and there are 603 days between this midpoint and the end of his employment. The undersigned multiplied $22,566.40 in compensatory damages by the 9% interest rate to get an interest rate of $2,030.97 per year. That amount divided by 365 days in a year equals $5.56 in interest per day. That amount multiplied by the 603 days between the midpoint of Persaud's employment and the end of his employment equals a total interest of $3,352.68. Accordingly, the undersigned recommends that Persaud be awarded **pre-judgment interest of $3,352.68, plus $5.56 per day between August 6, 2014 and the date of judgment.**

f. Post-Judgment Interest

Plaintiffs seeks post-judgment interest at a statutory rate of nine percent. (Am. Compl. at 10, Dkt. 1.) Such interest "shall be allowed on any money judgment in a civil case recovered in a district court." *See* 28 U.S.C. § 1961(a); *see, e.g.*, *Fermin*, 93 F. Supp. 3d at 53. Post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961. *Tacuri v. Nithun Constr. Co.* No. 14-CV-

18

2908 (CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015).  Accordingly, the

undersigned respectfully recommends that Plaintiffs be awarded **post-judgment interest, to be**

**calculated from the date the Clerk of Court enters judgment in this action until the date of**

**payment, at the rate set forth in 28 U.S.C. § 1961.**

> g.   Attorneys' fees and costs

Plaintiffs seeks reasonable attorneys' fees and costs.  (Am. Compl. at 10, Dkt. 1; Pls.' Mem.

at 6, Dkt. 28-1.)  They are entitled to recover attorneys' fees under both the FLSA and NYLL.  *See*

29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  District courts have broad discretion to determine the

amount awarded, and the party requesting fees must submit documentation to support its claims.

*Mahoney*, 2016 WL 6585810, at *18.  Courts calculate appropriate attorneys' fees by multiplying the

number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  *Saucedo*,

2016 WL 8376837, at *17.  This "lodestar method" may be adjusted based on the circumstances of

the case.  *Id.*

A reasonable hourly rate is the rate a "reasonable client would be willing to pay."  *Saucedo*,

2016 WL 8376837, at *16-17.  The Second Circuit and various district courts have identified case-

specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested

are proportional to fees awarded to other attorneys performing similar services with comparable

skill, expertise and reputation.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522

F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19.  In recent years, decisions in this

District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for

partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal

support staff."  *Id.* (quoting *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, 12-CV-

5737 (ILG)(JMA), 2014 U.S. Dist. LEXIS 141455, at *18 (E.D.N.Y. Sep. 15, 2014)).

According to the time records submitted, Plaintiffs are seeking hourly rates of $350 for

19

Attorney Jodi J. Jaffe and $75.00 for her paralegals.[4]  (Jaffe Aff. Ex. A, Dkt. 28-8; *see* Pls.' Mem. at 6, Dkt. 28-1.)  Plaintiffs submitted time sheets and a summary of counsel's qualifications.  (Jaffe Aff., Dkt. 28-8.)  Jaffe is a fifty percent shareholder in the Jaffe Glenn Law Group with 28 years of experience.  (*Id.* at 1.)  She is licensed to practice in Florida, New Jersey, and New York, practicing in the federal courts of these jurisdictions.  (*Id.*)  She states that she and her paralegals spent a total of 30.60 hours on this action, incurring fees of $6,420.  (*Id.*)

In light of the fees awarded to other attorneys performing similar services with comparable skill, expertise, and reputation in FLSA cases, the undersigned finds the requested rates reasonable. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  Plaintiff's counsel billed a total of 15 hours and her paralegals billed a total of 15.60 hours. The undersigned finds these hours reasonable, particularly because Attorney Jaffe excluded the time she spent correcting errors.  Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded **$6,420 in attorneys' fees.**

Plaintiffs are also entitled to recover reasonable costs under the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ)(JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).  Plaintiffs request costs of $603.93.  (Pls.' Mem. at 7, Dkt. 28-1.)  The first docket entry establishes that Plaintiffs paid the $400 filing fee. (Dkt. 1.)  For the remaining $203.93, Plaintiffs submit documentation supporting the various fees incurred in litigating the current action.

---

[4] In Plaintiffs' Memorandum of Law, Attorney Jaffe requests $95.00 an hour for her legal assistants, however, the time sheets that she submitted with her Fees and Costs Affidavit state that her legal assistants were billed at a rate of $75 an hour.  Accordingly, the undersigned considers the $75 an hour rate as more appropriate. (*Compare* Dkt. 28-1 at 6 *with* Dkt. 28-8, Ex. A.)

(Jaffe Aff. Ex. A, Dkt. 28-8.)  The Court finds the costs reasonable and recommends that Plaintiffs be awarded **$603.93 in costs.**

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that default judgment be entered against Defendants Tulsie and Queens Carpet Mall, finding them jointly and severally liable, and that Plaintiffs be awarded damages in the total sum of **$117,561.06** plus post-judgment interest, as follows:

A.  An award of **$57,051.65** for Kalika Bhagwat, comprised of:

    (i)    **$26,831.80** in unpaid overtime compensation;

    (ii)    **$2,500** in statutory damages for the NYLL wage notice claim;

    (iii)    **$2,500** in statutory damages for the NYLL wage statement claim;

    (iv)    **$18,114.10** in liquidated damages;

    (v)    **$7,105.75** in pre-judgment interest, plus $6.61 per day from August 9, 2014 to the date of judgment; and

    (vi)    **Post-judgment interest** as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied.

B.  An award of **$53,485.48** for Naresh Persaud, comprised of:

    (i)    **$22,566.40** in unpaid overtime compensation;

    (ii)    **$2,500** in statutory damages for the NYLL wage notice claim;

    (iii)    **$2,500** in statutory damages for the NYLL wage statement claim;

    (iv)    $**22,566.4** in liquidated damages;

    (v)    **$3,352.68** in pre-judgment interest, plus $5.56 per day between August 6, 2014 and the date of judgment; and

    (vi)    **Post-judgment interest** as provided in 28 U.S.C. § 1961, to run from the date of

judgment until the judgment is satisfied.

C. An award of **$7,023.93** in attorneys' fees and costs for Plaintiffs, comprised of:

    (i)      **$6,420** in attorneys' fees; and

    (ii)     **$603.93** in costs.

Plaintiffs are directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by September 17, 2018.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          September 12, 2018